LOTTINGER, Judge.
The instant suit was filed by James Otis Howard, as petitioner, against Loffland Brothers Company, its insurer, Travelers Insurance Company, and Pan American Petroleum Corporation, and its insurer, Aetna Casualty and Surety Company. A third party demand was filed by Pan American Petroleum Corporation against Lof-fland Brothers Company, for any damages which may be decreed herein against Pan American. The Lower Court awarded judgment in favor of defendants and dismissed the petitioner’s demand. The petitioner has taken this appeal, and Pan American Petroleum Corporation has filed a cross appeal to protect its demand under its third party petition. The demand is in tort for physical injuries sustained by the petitioner.
The facts disclose that the accident occurred on June 15, 1959 in Lafourche Parish, Louisiana. On said date the petitioner, an employee of Martin-Decker Corporation, went to Loffland Brothers Company drilling rig for the purpose of installing some electrical recording equipment belonging to his employer. Loffland Brothers Company, hereinafter referred to as Loffland, was drilling a well for Pan American Petroleum Corporation, hereinafter referred to as Pan Am, pursuant to a master drilling contract then in effect between the two parties. Petitioner was accompanied to the rig by one *705 co-worker, W. J. Breaux. During the course of the installation, petitioner fell from the drilling rig a distance of some twenty to thirty feet and landed on a steel platform below. He alleges that he sustained critical injuries resulting in horrible pain, mental anguish, loss of earning capacity and permanent physical disabilities.
The petitioner claims that the area of the drilling rig where he was to perform his work was so cluttered with drill collar subs, pipe and other material that it was impossible for him to do the work in that area. He, therefore, had to gain access to the mud line by standing with one foot on the base of the derrick leg, and the other foot on the top of the guard rail. He claims that while standing in such a position, the defective wrench furnished him by Lof-fland slipped from the pipe to which it was attached, causing him to fall. He claims that his fall and the resulting damages were caused through no fault on his part, but resulted from the gross negligence of the defendants in two basic respects:
(1) Defendant’s failing to provide him with a safe place in which to perform the work required of him by the contract between Martin-Decker and Pan Am and
(2) Defendant’s furnishing him with a large stillson wrench which was so defective and unfit for its intended purposes as to amount to a dangerous instrumentality or trap.
As a result of the accident and injuries, the petitioner filed this suit in damages against the various defendants as mentioned above. Martin-Decker, the employer of petitioner, intervened in this lawsuit asking for reimbursement of Workmen’s Compensation benefits which have been paid to the petitioner. As stated above, Pan Am filed a third party petition against its contractor, Loffland, seeking reimbursement from Loffland for any damages which may be allowed petitioner from Pan Am as a result of this suit. The Lower Court held that the petitioner has failed to prove any negligence whatsoever on anybody except himself, and dismissed the petitioner’s suit.
The questions which are before us are strictly factual. Although the petitioner claims that the defendants refused to provide him with a safe place within which to perform his work, he admits that the floor of the derrick rig which he contends to be so cluttered up was no more cluttered up than the ordinary drilling rig. The vast weight of the testimony indicates that the drill collar subs were on the floor of the derrick but were stored in racks. Although the petitioner claimed that he was afraid that these subs might fall and roll on him, several of the witnesses testified that the racks were constructed in such a manner as it would have been impossible for the subs to fall over. The testimony clearly discloses that the purpose of the guard rail, upon which petitioner was standing with one foot at the time he fell, was for the exclusive purpose of preventing the workmen from falling from the floor of the drilling rig. The record indicates that petitioner was no novice in the oil field work, and he testified that he had been on almost every rig situated in the area. The record indicates that it was the petitioner’s own decision to leave the safety of the drilling rig floor and take a precarious position outside the guard rail in performing his duties.
With regard to the stillson wrench, we feel that the petitioner has failed to show that it was so defective as to constitute a trap, as claimed by petitioner. The evidence does show that the handle of the wrench was bent. Petitioner saw this condition prior to his accident, yet he decided to use it in his work. He claims, furthermore, that after he had fallen and while laying on the derrick floor “rising in pain” he noticed that the wrench had bad teeth. At this time he was in such a state of pain that it was later difficult to put him to sleep for necessary surgical procedures On this particular point the Lower Court did not believe the testimony of the peti *706 tioner. It’ chose instead to believe the testimony of an employee of Loffland who stated that he noticed the wrench subsequent to the accident and that the only thing wrong with it was the fact that the handle had been bent. As a matter of fact this employee testified that he used the wrench in his work subsequent to the accident.
The Lower Court, in its discretion, found that the petitioner of his own accord chose to perform his work while standing outside the guard rail with one foot on the guard rail and the other foot on the leg of the derrick. This was an extremely precarious position, and the record does not disclose that the defendants failed or refused to give petitioner a safer place in which to work. The evidence further failed to show that the wrench was defective; the Lower Court did not believe that the mere fact that the handle was bent rendered it unsafe for use by petitioner. The Lower Court in holding in favor of defendants stated as follows:
“To labor the issue longer would be a useless gesture. In the first place, Mr. Howard has not proved any negligence whatsoever on anybody except himself. And even if we were to decide that he did prove some negligence on the part of some defendant, we would have to hold him at least con-tributorily negligent because he says that he recognized the dangerous condition of the floor (testimony 58). Fie recognized the twisted condition of the handle of the wrench before using it (testimony 41). He stood on the rail and derrick leg and placed himself outside of the guard rail (testimony 12) which is located and placed there only for the purpose of people standing on the inside and to keep them from falling (testimony 35).”
We certainly are unable to find any error in the judgment of the Lower Court. As a matter of fact, we are fully in accord therewith.
For the reasons hereinabove assigned, the judgment of the Lower Court will be affirmed, all costs of this appeal to be paid by petitioner.
Judgment affirmed.